NOT FOR PUBLICATION

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
------------------------------------------------------------X

In Re:                                              CHAPTER 13

MICHELLE CIBELLI,                                   CASE NO. 09-44778 (JNP)

       Debtor.
------------------------------------------------------------X    **OPINION**


**APPEARANCES:**

Victor Druziako, Esq.
Law Office of Victor Druziako, Esq.
1841 West Landis Avenue
Vineland, NJ 08360
*Attorney for the Debtor, Michelle Cibelli*

Amy E. Vulpio, Esq.
Geoffrey F. Sasso, Esq.
White and Williams LLP
1650 Market Street, Suite 1800
Philadelphia, PA 19103
*Attorneys for L.F. Driscoll Company, LLC*


**JERROLD N. POSLUSNY, JR., U.S. Bankruptcy Judge**

Before the Court is LF Driscoll Company, LLC's ("Driscoll") motion to reconsider the Court's basis for denying the Debtor's motion to reopen her case to disclose a post-confirmation asset. The Court initially held that post-confirmation assets that are not necessary to fund a debtor's plan are not property of the estate and therefore do not need to be disclosed. For the reasons set forth below, the Court grants the motion to reconsider, and holds that the Debtor had a continuing duty to disclose the new post-confirmation asset. However, the Court cannot reopen the Debtor's case because of the time restrictions under 11 U.S.C. § 1322(d).

## BACKGROUND

In 2009, Michelle Cibelli (the "Debtor") filed a Chapter 13 petition. The Debtor's plan was confirmed in February 2010 and provided for thirty-six payments beginning on January 1, 2010. In 2013, the Debtor was discharged and her bankruptcy case was closed.

In December 2015, the Debtor filed a motion to reopen her case to schedule an undisclosed personal injury claim from 2012 (the "Motion to Reopen"). The Debtor was allegedly injured in an accident at work. The Debtor's bankruptcy counsel asserts that the Debtor's failure to amend her schedules to list her personal injury claim was the result of "inadvertence and proximity to the closure of her case." Certification in Support of Motion to Reopen ¶ 4. The Debtor's personal injury case was filed in state court in 2014 and is still pending. The Debtor's counsel stated that if the Debtor prevails in the state court action, "there may be proceeds from that action in excess of any exemption that [the Debtor] may have claimed in her bankruptcy case, which funds may be available for distribution to creditors." Id. ¶ 6.

Driscoll, a defendant in the state court proceeding, filed an objection to the Motion to Reopen. Driscoll asserted that the Motion to Reopen was time barred and that the Debtor acted

1

in bad faith by failing to disclose the personal injury claim. Driscoll is pursuing the defense of judicial estoppel in the personal injury lawsuit.[1]

In January 2016, the Court entered an order denying the Motion to Reopen (the "Order"). The Court explained that according to the Debtor's plan, and under 11 U.S.C. § 1327(b), confirmation vested all of the property of the estate in the Debtor. The Court relied on In re Foreman, 378 B.R. 717 (Bankr. S.D. Ga. 2007), in holding that "assets acquired post-confirmation are not property of the bankruptcy estate unless they are necessary to maintain the plan." Foreman, 378 B.R. at 721 (quoting In re Ross, 278 B.R. 269 (Bankr. M.D. Ga. 2001)). The Court held that since the Debtor's personal injury claim was a post-petition, post-confirmation asset, it was not property of the bankruptcy estate unless it was necessary for reorganization. Because no party had asserted that the Debtor's potential recovery in the personal injury action was necessary to fund the plan, the Court held that the action was not property of the estate and the Debtor had no duty to disclose the cause of action in her bankruptcy schedules. The Motion to Reopen was denied as "unnecessary and improper." Order ¶ 1.

Driscoll filed a motion to reconsider (the "Motion to Reconsider"), arguing that the Court correctly denied the Motion to Reopen, but that the basis for the Court's decision was not proper and that the decision should be altered or amended to simply deny the Motion to Reopen.

---

[1] The issue of whether judicial estoppel applies properly belongs before the state court. See In re Phillips, 2012 WL 1232008, at *4 (Bankr. D.N.J. Apr. 12, 2012) ("[T]he bankruptcy court in which the debtor's case had been pending is not the appropriate forum of litigating and ultimately determining whether the debtor is estopped from bringing a claim before another court."); In re Dewberry, 266 B.R. 916, 920 (Bankr. S.D. Ga. 2001). Here, the Debtor failed to disclose the potential lawsuit to the bankruptcy court. The Debtor made an alleged "self-serving contradiction" when she brought the state court action. Thus, judicial estoppel must be invoked and resolved in the state court, where the alleged self-serving contradiction was first asserted.

2

## JURISDICTION

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(a) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, as amended September 18, 2012, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. § 1408. The following constitutes the Court's findings of fact and conclusions of law as required by Fed. R. Bankr. P. 7052.[2]

## DISCUSSION

I.  Reconsideration

In order for the Court to grant a motion for reconsideration, the moving party must show one of three circumstances: "(1) there is newly available evidence, (2) there is an intervening change in the controlling law, or (3) there is a need to correct a clear error of law or prevent manifest injustice." In re Cent. Jersey Airport Servs., LLC, 282 B.R. 176, 182 (Bankr. D.N.J. – 2002) (citing North River Ins. Co. v. CIGNA Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)).

"Motions for reconsideration are fully within the bankruptcy court's discretion." In re Patriot Contracting Corp., 2008 WL 934402, at *1 (Bankr. D.N.J. Apr. 1, 2008). In order to satisfy its burden, Driscoll must set forth "concisely the matters or controlling decision which [it] believes the court has overlooked." Id. at *2. Reconsideration is not an opportunity for a "second bite of the apple." Id. "A motion for reconsideration will only be granted if the moving party has provided the court with dispositive factual matters or controlling decisions of law that

---

[2] To the extent that any of the findings of fact constitute conclusions of law, they are adopted as such. Conversely, to the extent that any conclusions of law constitute findings of fact, they are adopted as such.

3

were overlooked. . . . Finally, a motion for reconsideration is an extraordinary remedy that should be used 'sparingly' and limited to exceptional circumstances." Id. (citations omitted).

The Court has reviewed the parties' submissions and the case law cited, and has determined that there is cause to reconsider the basis for which the Order was entered, particularly because the Court did not afford the parties an opportunity to brief the issue prior to entering the Order.

Driscoll contends that the Court's reasoning was clear error and argues that Foreman is no longer good law. Although Foreman was never actually overruled, the Eleventh Circuit considered facts materially the same as in this case in In re Waldron, 536 F.3d 1239 (11th Cir. 2008), and took a different position than Foreman. The court in Waldron ruled that underinsured motorist benefits arising from a post-confirmation lawsuit were property of the estate under § 1306 and did not revest in the debtor under § 1327(b). Id. at 1242. The court explained that § 1306(a) "does not mention the confirmation of the debtor's plan as an event relevant to what assets are property of the estate, and section 1327(b) does not address assets acquired after confirmation." Id. (citations omitted). Therefore, the Eleventh Circuit held that the bankruptcy court did not abuse its discretion in holding that a post-confirmation settlement must be disclosed in the debtor's schedules. Id. at 1246.

The court in Waldron distinguished Telfair v. First Union Mortgage Corp., 216 F.3d 1333 (11th Cir. 2000), a case which formed the basis of the Foreman holding. In Telfair, the court held that "only property necessary for the execution of the plan [remains] property of the estate after confirmation." Id. at 1340. The court in Waldron distinguished Telfair because:

> We did not address in Telfair entirely new property interests acquired by the debtor after confirmation and unencumbered by any preexisting obligation. We instead stated that "confirmation returns so much of that property to the debtor[ ]," and "that

4

> property" referred to the property of the debtor placed in the control of the bankruptcy court when the debtor filed his petition. Id. <u>New assets that a debtor acquires unexpectedly after confirmation by definition do not exist at confirmation and cannot be returned to him then.</u>

Waldron, 536 F.3d at 1242-43 (emphasis added). Driscoll argues that the instant case is on point with Waldron because the Court is addressing an entirely new property interest acquired by the Debtor post-confirmation. Therefore, the personal injury action cannot, by its nature, be included in a confirmed plan and returned to the Debtor.

The court in Waldron further held that "[t]he disclosure of postconfirmation assets gives the trustee and creditors a meaningful right to request, under section 1329, a modification of the debtor's plan to repay his creditors." Waldron, 536 F.3d at 1245. Indeed, "[i]f postconfirmation assets were not subject to disclosure, modifications for increased payments would be rare because few debtors would voluntarily disclose new assets, and the trustee and creditors would be unlikely to obtain this information from sources other than the debtor." Id. This Court agrees.

The Court also finds Coles v. Carlini, 2013 WL 3811642 (D.N.J. July 22, 2013), to be persuasive. In Coles, the debtors' Chapter 13 plans were confirmed before an incident which gave rise to a cause of action. Id. at *8. The court held that the debtors had an "ongoing, affirmative duty to disclose contingent assets to the bankruptcy court." Id. Moreover, "[p]roperty acquired after confirmation still can be property of the estate." Id. at *9. Therefore, the debtors in Coles had a duty to disclose the post-confirmation asset during the pendency of their bankruptcy cases. Id. at *8-9.

The Court finds the reasoning in Waldron and Coles to be compelling, and therefore reconsiders its reliance on Foreman. Following the reasoning in Waldron and Coles, the Court

5

holds that the Debtor should have disclosed her personal injury action in her bankruptcy case, even though the personal injury action is a post-confirmation asset.

II. <u>Reopening</u>

Driscoll argues two reasons why the case should not be reopened: that the Debtor acted in bad faith, and that the Debtor is time barred from amending her plan to make additional payments. <u>See</u> 11 U.S.C. § 1322(d).

   a. <u>Bad Faith</u>

Driscoll states on multiple occasions that the Debtor acted in bad faith by failing to disclose the personal injury claim. The Court does not believe that the Debtor acted in bad faith. By the time the Debtor was injured, her bankruptcy case was almost three years old and in the thirty-third month of her thirty-six month plan. At the time the Debtor filed the state court action, it had been four years since her plan was confirmed, she had received her discharge, and her bankruptcy case was closed. It is not uncommon for debtors to inadvertently fail to disclose an asset, especially after a plan has been confirmed and time has lapsed since confirmation. Debtors often do not communicate regularly with bankruptcy counsel, and the bankruptcy notices, hearings, and proceedings become much more of a rarity, especially when a debtor is making regular monthly payments under a plan. Therefore, it is understandable that the Debtor may not have been in contact with her bankruptcy counsel or known that she had an obligation to disclose this new potential asset. Moreover, her personal injury attorney was not the same attorney or from the same firm as her bankruptcy counsel. As such, it is reasonable to conclude that the Debtor's bankruptcy counsel did not know of the post-confirmation injury and did not have an opportunity to advise the Debtor of a potential duty to disclose. Indeed, the Debtor's

6

bankruptcy attorney certified that he had not met with the Debtor since her 341(a) meeting, almost three years prior to when the Debtor's personal injury claim arose. Dkt. No. 53 at 1.

This case is distinguishable from the circumstances in Coles, 2013 WL 3811642, at *1, where the court found that the debtors/plaintiffs acted in bad faith by failing to disclose potential claims in their bankruptcy proceedings. In Coles, the debtors asserted that they did not disclose the claims because they believed the claims had no monetary value. Id. at *11. However, they later signed a verified complaint demanding $150,000 and punitive damages. Id. The court explained that:

> Plaintiffs' own justifications for nondisclosure simply do not excuse the continued nondisclosure after Plaintiffs swore to this Court, via the verified complaint, that the claims were of significant value. [Plaintiffs] do not suggest that nondisclosure was inadvertent or a result of carelessness. They do not suggest that they were unaware of the duty to amend their disclosures to the bankruptcy court. Instead, they swear that they believed the claims were of little value and at the same time also swear in the verified complaint herein that the claims are significantly valuable.

Coles, 2013 WL 3811642, at *11 (emphasis added). The court held that the plaintiffs "had knowledge of their claims . . . signed and filed a verified complaint seeking substantial money damages . . . . [and] had a motive to conceal the contingent assets . . . ." Id. Here, the Court finds no such motive. For the reasons stated above, the Court is satisfied that the Debtor's failure to disclose was not the product of bad faith.

    b.    <u>Deadline to Complete a Plan</u>

Despite the fact that the Court does not believe the Debtor acted in bad faith, the Court cannot reopen the case because of the deadline to complete a plan under 11 U.S.C. § 1322.

Section 350(b) of the Bankruptcy Code permits a bankruptcy case to be reopened "to administer assets, to accord relief to the debtor, or for other cause." 11 U.S.C. § 350(b). "When

considering whether to reopen a closed bankruptcy case to administer a cause of action, a court should consider three interests: (1) the benefit to the debtor; (2) the prejudice or detriment to the party in the pending litigation; and (3) the benefit to the debtor's creditors." In re Ingram, 531 B.R. 121, 123 (Bankr. D.S.C. 2015). Here, if the Court were to reopen the case, the benefit to the Debtor would be that she may be more likely to prevail over Driscoll's judicial estoppel argument in the state court action. See id. The detriment to Driscoll rests in the same possibility. See id. Since "a favorable ruling for either party would necessarily impose on its opponent a corresponding detriment, benefit to the debtor and prejudice to the creditor (or opposing party) are neutral." Id. Therefore, the Court must focus its attention on the benefit to the Debtor's creditors. Id.

Here, because the Motion to Reopen was filed almost six years after the Debtor's plan payments began, the reopening of the Debtor's case will have no effect on the estate or creditors. This is because a Chapter 13 plan must be completed within five years under 11 U.S.C. §§ 1322(d) and 1329(c). The court in Ingram explained that:

> Congress deliberately included this time limitation because prior to the enactment of the current version of chapter 13,
>
>> [e]xtensions on plans, new cases, and newly incurred debts put some debtors under court supervised repayment plans for seven to ten years. This has become the closest thing there is to indentured servitude; it lasts for an indentifiable [sic] period and does not provide the relief and fresh start for the debtor that is the essence of modern bankruptcy law.
>
> 8 Collier's ¶ 1300.02 (citing H.R.Rep. No. 595, 95th Cong. 1st Sess. 117 (1977)).

Ingram, 531 B.R. at 125. Therefore, "[d]istribution of non-disclosed or post-petition acquired assets will . . . be constrained by chapter 13's time limitation . . . ." Id. Here, the Debtor seeks to

8

reopen her case because she believes that if she prevails in the state court action, she will recover enough money to fund a distribution to creditors. No matter how well intentioned the Debtor may be, at this stage, the Debtor is unable to propose an amended, approvable plan because the sixty month time limitation has expired. See In re D'Antignac, 2013 WL 1084214, at *5 (Bankr. S.D. Ga. Feb. 19, 2013); In re Thompson, 344 B.R. 461, 465 (Bankr. W.D. Va. 2004). Because the Debtor filed the Motion to Reopen beyond the statutory deadline for her Chapter 13 plan to conclude, there would be no effect of reopening the case, and the Motion to Reopen must be denied.

## CONCLUSION

For the reasons set forth above, the Motion to Reconsider is granted. Following the reasoning in Waldron and Coles, the Court reconsiders the basis for previously denying the Motion to Reopen and now holds that the Debtor had an obligation to disclose the personal injury action even though it arose post-confirmation.

Nevertheless, because the Debtor seeks to reopen her case beyond the five year deadline set by 11 U.S.C. § 1322(d), the Motion to Reopen must be denied as time-barred, despite the fact that the Court finds that the Debtor did not act in bad faith.

Dated: May 3, 2016

JERROLD N. POSLUSNY, JR.
U.S. BANKRUPTCY COURT JUDGE